In the Matter of the Accounting of NATIONAL CITY BANK OF NEW YORK, as Trustee under a Trust Agreement Made by WILLIAM C. FIELDS.

Supreme Court, Special Term, New York County, October 29, 1948.

*Mitchell, Capron, Marsh, Angulo & Cooney* for trustee, petitioner.

*H. Vincent Smart* for Harriet V. Fields and another, defendants.

*Bert Cotton* for Magda Michael, as executrix of William C. Fields, deceased, defendant.

*George L. Kobbe* for Walter Fields and another, defendants.

McNally, J. This is a motion by defendant, Harriet V. Fields, for judgment on the pleadings construing the trust instrument annexed to the petition as giving her, either alone or together with her son, the principal of the trust fund. In addition, the movant seeks to strike out the answer of defendant, Walter Fields, or parts thereof, and portions of the answer of the defendant Michael, executrix of the estate of W. C. Fields. Rule 112 of the Rules of Civil Practice provides: "If either party be entitled to judgment on the pleadings, the court may, on motion, give judgment accordingly, and without regard to which party makes the motion." The application, therefore, presents for determination the proper construction of the trust instrument.

On or about November 8, 1926, William C. Fields, then a resident of New York, made and delivered to petitioner, the National City Bank of New York, two trust agreements. This proceeding relates to one of the trust agreements, known as

Trust No. 1, and a companion proceeding to Trust No. 2. By the terms of Trust No. 1, the settlor transferred $50,000 to the bank, as trustee, " for the following uses and purposes:

" A. To apply the income from said trust fund in monthly installments as nearly equal as may be practical, to the use of the Settlor so long as he shall live.

" B. After the death of the Settlor, to apply the income from said trust fund in monthly installments as nearly equal as may be practical, to the use of Mildred Linelle Blackburn, until the first day of December, 1946, or until the death of the said Mildred Linelle Blackburn, whichever event shall first occur.

" C. On the first day of December, 1946, if said Mildred Linelle Blackburn then survives and the Settlor is dead, to convey, transfer and pay over the principal of the trust fund to her, the said Mildred Linelle Blackburn.

" D. In the event that the said Mildred Linelle Blackburn shall survive the Settlor for a period of at least three calendar months, but shall die prior to the first day of December, 1946, thereupon, upon such death forthwith, and without delay, to convey, transfer and pay over the principal of the trust fund to (a) if the said Mildred Linelle Blackburn shall have died intestate, to the same persons to whom, and in the same proportions in which, the said property would, if the same belonged to the said Mildred Linelle Blackburn, descend or be distributed in the event of her death according to the laws of descent of real property of the State of New York then in force, or (b) if she shall have died testate, to such person or persons and in such proportions as she shall by her last will and testament appoint, it being expressly understood and agreed that any general disposition of all her property, or of her residuary estate, which the said Mildred Linelle Blackburn shall make by her last will and testament shall be deemed to be a disposition of her interest in the said trust estate hereunder.

" E. In the event that upon the death of the Settlor the said Mildred Linelle Blackburn shall be no longer living, then upon his death or in the event of her death prior to the first day of December, 1946, at a time that shall be after the death of the Settlor but shall not be at least three calendar months after the death of the Settlor, then upon her death, to convey, transfer and pay over the principal of the trust fund in equal shares, to Walter Dukenfield, brother of the Settlor, and/or Adele Dukenfield Smith, sister of the Settlor, or if both of them be dead, to such person or persons, and in such proportions as the Settlor shall by his last will and testament appoint, it being

expressly understood and agreed that any general disposition of all his property or his residuary estate which the said Settlor shall make by his last will and testament, shall be deemed to be a disposition of his interest in the said trust estate hereunder, or in default of such appointment, to such persons as shall then constitute the heirs at law of the Settlor according to the laws of descent of real property of the State of New York then in force.''

The trust agreement provided that the trust was to be deemed a New York trust and to be governed in all respects by the laws of New York. The settlor reserved the right during his lifetime to modify, alter or revoke the agreement, in whole or in part.

The only difference between Trust No. 1 and Trust No. 2 was in respect of the identity of the primary beneficiary, hereinafter referred to as the '' beneficiary ''. The original beneficiary of Trust No. 2 was one Elizabeth C. Poole. During the year 1927 the settlor substituted Mildred Linelle Blackburn for Elizabeth C. Poole as beneficiary of Trust No. 2. On April 15, 1931, the settlor substituted the name of his brother, Walter Fields, for that of Mildred Linelle Blackburn as beneficiary of Trust No. 1 and the name of his sister, Adele Smith, for that of Mildred Blackburn as beneficiary of Trust No. 2.

The settlor died a resident of California on December 25, 1946. He had moved to California and established his residence there in 1928. He left a widow, Harriet V. Fields, the moving party on this application, who had been domiciled in New York until 1936, when she moved to California and established her present residence there. She and the settlor had not lived together since 1907. W. Claude Fields, Jr., is the issue of their marriage. During the period of their separation the settlor is claimed to have paid about $2,500 per year to his wife for her support.

The estate left by the settlor in California amounts to about $800,000. The principal of Trusts No. 1 and No. 2 is not included in that figure. In his will the settlor gave the widow and his son legacies of $10,000 each. He left $5,000 each to his brother and his sister. In addition, he made his brother beneficiary of a trust income of $75 per week for life and his sister beneficiary of a trust income of $60 per week for life. The residuary estate, after the death of his brother and sister and one Ramona Ray, was dedicated to the establishment of a college for '' orphan white boys and girls where no religion of any sort is to be preached ''. The will was admitted to

probate in California and letters testamentary issued to Magda Michael, as executrix.

Thereafter the petitioner instituted this proceeding under article 79 of the Civil Practice Act for the settlement of its account as trustee of Trust No. 1. The defendants are the brother and sister of the deceased settlor, the widow and son, and the executrix of the settlor's estate. The petition also seeks a construction of the trust agreement for the purpose of determining the " rights, shares and interests, if any," of the defendants to the trust fund. The petitioner's procedure is proper. (*Irving Trust Co.* v. *Walton,* 274 App. Div. 119.) All the defendants have appeared and filed answers. A similar proceeding with the same defendants has been commenced in connection with Trust No. 2. In the case of Trust No. 1, the principal is claimed by the settlor's brother, Walter Fields, by the executrix and by the widow. The corpus of Trust No. 2 is claimed by the settlor's sister, Adele Smith, by the executrix and by the widow.

The claim of the executrix that she is entitled to the corpus of each trust is based upon the fact that none of the events occurred on the happening of which the trust agreements required payment thereof to the persons therein named. Accordingly, the executrix asserts that the principal of the trusts reverted to the settlor upon his death and became part of his estate. The claims of the brother to the corpus of Trust No. 1 and of the sister to the corpus of Trust No. 2 are predicated upon their contention that it was the clear and unmistakable intent of the settlor that the corpus of each trust was to be paid to the beneficiary, if the settlor died after December 1, 1946, leaving the beneficiary surviving. The widow's claims to the corpus of each trust are sufficiently discussed in the opinion filed upon a companion motion by Walter Fields to strike out the widow's answer decided simultaneously herewith (193 Misc. 777).

The trust instruments here involved are required to be construed in accordance with and in the light of the intention of the settlor as gleaned from the whole thereof. The intention having been ascertained, the component parts thereof are to be construed so as to conform therewith.

The devolution of the corpus of the trusts depends largely upon the construction and interpretation of paragraphs C and E above set forth. Paragraph C, if removed from its context, imposes two precedent conditions upon the transfer of the corpus to the beneficiary, viz., death of the settlor prior to

December 1, 1946, and the survival of the beneficiary on December 1, 1946. Disposition of the corpus, upon the death of the beneficiary, is provided for in paragraph E. Thereby payment of the corpus is conditioned upon the death of the settlor, whether before or after December 1, 1946, preceded by the death of the beneficiary, or upon the death of the settlor and the subsequent death of the beneficiary prior to December 1, 1946. Upon the said occurrences the corpus was payable to the brother and sister of the settlor, or if they be dead to the settlor's testamentary appointee, or in default of such appointment to his heirs at law.

It will be observed that alternative provisions appear to have been made for the devolution of the corpus in every contingency except that which materialized, to wit, the death of the settlor after December 1, 1946, and the survival of the beneficiary. The instruments, unless construed and interpreted as hereinafter set forth, are also devoid of any content which will explain the requirement for the prior death of the beneficiary to warrant payment of the corpus to the alternative remaindermen upon the death of the settlor after December 1, 1946, since in no event was the beneficiary to receive income after that date.

It is obvious the settlor intended that the beneficiary take the corpus in the event the beneficiary survived him after December 1, 1946; otherwise, why should the gift over to the brother and sister be conditioned on the death of the beneficiary? Furthermore, if that was not the settlor's intention, why did he not provide for the devolution of the corpus in the event the beneficiary survived him after December 1, 1946? Any doubt regarding the settlor's intention to give the corpus to the beneficiary should the beneficiary survive him after December 1, 1946, dissipates when it is attempted to construe paragraph E literally as presently constituted after the substitution of the settlor's brother as beneficiary in respect of Trust No. 1 and of the settlor's sister in respect of Trust No. 2. In that event it would appear that after December 1, 1946, as to Trust No. 1 the brother is not entitled to the corpus unless he dies, and likewise as to Trust No. 2 the sister may not take the corpus unless she dies. When, however, effect is given to the patent intent of the settlor to provide for payment of the corpus to the beneficiary after December 1, 1946, in the event the beneficiary then survives him, the ambiguities and distortions incident to a literal interpretation of the instruments, unaided by the light cast by the settlor's intention, are resolved and dispelled.

The settlor intended neither a reversion nor intestacy in respect of the corpus. The instruments as a whole spell out the settlor's intent to reserve a life estate for the benefit of himself and to designate the beneficiary as the secondary income beneficiary until December 1, 1946, in the event of the death of the settlor prior thereto, and insofar as the corpus is concerned, to require the payment thereof to the beneficiary upon the settlor's death, but in no event prior to December 1, 1946, unless both the settlor and the beneficiary died prior thereto, in which event provisions were made not now material.

The case of *Williams* v. *Jones* (166 N. Y. 522) appears to be closely in point. The testatrix, in the ninth clause of her will, devised real property in trust during the life of her son, Mason, to apply one half of the income to the use of Mason and the other half to the use of his wife, Louise, " for so long during the natural life of said son as she should live ". If Louise should predecease Mason, the latter was to take the entire income. If Mason should die leaving both Louise and their son Renshaw surviving, the trustees were to continue one half the principal in trust for Louise until her death or remarriage and pay her the income until that time. Upon her death or remarriage the one-half share was to go to Renshaw, if living, or to his issue, if he had previously died. If he left no issue, the one-half share was to go to the then issue, per stirpes, of Mason's previous marriage. The other half of the corpus, again if Mason died leaving both Louise and Renshaw surviving, was to continue to be held in trust for Renshaw for life and upon his death to go to his issue, and if no issue survived, to go to the living issue, per stirpes, of Mason by the previous marriage. Renshaw died without issue while Mason was still alive and Louise survived Mason's death. Although the testatrix had provided for the contingency of both Louise and Renshaw surviving Mason, she had not specifically directed what disposition should be made of the property if Louise alone survived Mason. The Special Term held that the property of the trust was undisposed of and became part of the residuary estate of the testatrix, and the Appellate Division affirmed (54 App. Div. 349). The Court of Appeals, however, reversed. The court said (pp. 532–533) : " The intention of the testatrix must be our absolute guide in construing her will. Such is the mandate of the statute, and that principle is so firmly established by the decisions of this and other courts as to render any citation of authorities needless. Another equally well-established canon of interpretation is that that intention is to

be ascertained from the whole will taken together, rather than from any particular provision considered by itself. If a general scheme is found to have been intended, which is valid, it is the duty of the court to carry it into execution and thus effectuate the purpose of the testatrix. When the intention is ascertained, the mode of expression, or an inadvertent omission in some particular, should be subordinated to the intent without regard to technical objections if in harmony with the general scheme and purpose of the will. The primary effort should be to find the testatrix's general scheme and carry her purpose into effect, to which even general rules of interpretation are subservient. In interpreting this will, the facts and circumstances attending its execution must be considered, including the relation of the parties, the nature and situation of the property, and the apparent purpose of the will or special gift.'' Although the only express provision for the payment of income to Louise, in the event that she survived Mason, was expressly conditioned on Renshaw's also surviving Mason, a contingency which did not occur, the court, on the basis of the intention of the testatrix, as judicially determined from the will, read as a whole, reached the conclusion (p. 534): '' it is clear that Louise O'Conor Jones is entitled to one-half of the income of the property until her death or remarriage ''.

The motion for judgment on the pleadings in favor of Harriet V. Fields and for other relief is accordingly denied and judgment directed in favor of Walter Fields construing the trust agreement as giving him the corpus in the event which occurred and directing petitioner to pay it over to him. Settle order.